# EXHIBIT A-1

### Post-Petition Payment History

| PAYMENT DUE DATE | AMOUNT DUE | DATE PAYMENT RECEIVED | AMOUNT RECEIVED | DATE PAYMENT APPLIED | AMOUNT APPLIED TO PRINCIPAL | AMOUNT APPLIED TO INTEREST | AMOUNT APPLIED TO ESCROW | TOTAL AMOUNT APPLIED | SUSPENSE |
|---|---|---|---|---|---|---|---|---|---|
| No payments received since date of bankruptcy filing. | | | | | - | - | - | $0.00 | $0.00 |
| TOTAL: | $0.00 | | $0.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

# NOTE

**NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.**

August 1, 1995                     ,          Baton Rouge                    , Louisiana
[Date]                                        [City]

3641 Rue Denise, New Orleans, Louisiana 70114
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $   84,018.00          (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is      HIBERNIA NATIONAL BANK

. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 8.000          %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the   first    day of each month beginning on       September 1          , 1995   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on August 1     , 2025    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   Post Office Box 481, Baton Rouge, Louisiana 70821-0481

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $      616.49          .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of   15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   4%          % of my overdue payment. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**LOUISIANA FIXED RATE NOTE** - Single Family -Fannie Mae/Freddie Mac Uniform Instrument
Form 3219 12/83
Amended 4/92
VMP ®-5V(LA) (9204)
VMP MORTGAGE FORMS - (313)293-8100 - (800)521-7291
Page 1 of 2                    Initials: _____



**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, attorneys' fees of    10%    % of the sums due under this Note, but not less than U.S. $ N/A

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. ALLONGE TO THIS NOTE

If an allonge providing for payment adjustments or for any other supplemental information is executed by the Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge         ☐ Other [Specify]         ☐ Other [Specify]

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Regulations (38 C.F.R. Part 36) issued under the Department of Veteran's Affairs ("V.A.") Guaranteed Loan Authority (38 U.S.C. Chapter 37) and in effect on the date of loan closing shall govern the rights, duties and liabilities of the parties to this loan and any provisions of this Note which are inconsistent with such regulations are hereby amended and supplemented to conform thereto.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)                        _____ (Seal)
-Borrower                                WILTON T. McCAY, JR.                        -Borrower
SSN:                                     SSN:
                                         VIRGINIA DUNSTAN McCAY
_____ (Seal)         BY: _____ (Seal)
-Borrower                                AGENT AND ATTORNEY IN FACT                  -Borrower
SSN:                                     SSN:

                                                                        *(Sign Original Only)*

"NE VARIETUR" for identification with a mortgage given before me on        August 1, 1995

_____                _____
Notary qualified in        East Baton Rouge                        Parish, Louisiana
JAMES K. McCAY, NOTARY PUBLIC

WITHOUT RECOURSE
PAY TO THE ORDER OF
NationsBanc Mortgage Corporation
Resource Bancshares Mortgage Group, Inc.

_Debra Miller_
DEBRA MILLER
ASSISTANT VICE PRESIDENT

"NE VARIETUR"
Identified with an act of
notarial endorsement & act of
assignment of note passed & executed
before me this 25 day of
August, 19 95.
_Ruth C Hinson_
Notary Public
M. O.B. Commission Expires September 26, 1999

RUTH C. HINSON
NOTARY PUBLIC
SOUTH CAROLINA

WITHOUT RECOURSE
PAY TO THE ORDER OF

NationsBanc Mortgage Corporation
By: _____
DANIEL F. HELLAMS
EXECUTIVE VICE PRESIDENT

"NE VARIETUR"
For Identification With An Act Of
Notarial Endorsement And Assignment
Of Mortgage Note passed before me
on this date AUG 21 1995
_____
NOTARY PUBLIC
MY COMMISSION IS FOR LIFE

PAY TO THE ORDER OF
RESOURCE BANCSHARES MORTGAGE GROUP, INC.
Without recourse, HIBERNIA NATIONAL BANK
By: _____
Gerald J. Lechney, Assistant Vice President



RESOURCE BANCSHARES MORTGAGE GROUP, INC. CERTIFIES THAT THE ORIGINAL OF THIS DOCUMENT HAS BEEN SENT TO THE APPROPRIATE RECORDS OFFICE FOR RECORDATION.

CERTIFIED TRUE COPY

95-33934

Loan Number: ▌

Case Number: ▌ LANO AU 11

[Space Above This Line For Recording Data]

# MORTGAGE

# NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

THIS MORTGAGE ("Security Instrument") is given on   August 1, 1995   , before me, JAMES K. McCAY

a Notary in and for   East Baton Rouge   Parish, Louisiana, and in the presence of the undersigned witnesses, by   WILTON T. McCAY, JR. and VIRGINIA TUNSTALL McCAY

("Borrower"), a person(s) of the full majority and a resident(s) of   Orleans   Parish, Louisiana, whose permanent mailing address is the Property Address stated below. Borrower declared and acknowledged that Borrower owes   HIBERNIA NATIONAL BANK   ,
a corporation organized and existing under the laws of   UNITED STATES OF AMERICA   and whose permanent mailing address is   Post Office Box 481, Baton Rouge, Louisiana 70821-0481   ("Lender"), the principal sum of

Eighty Four Thousand Eighteen and 00/100

Dollars (U.S. $ 84,018.00   ).
This debt is evidenced by Borrower's note of even date paraphed "Ne Varietur" by me, Notary, for identification herewith and delivered to Lender ("Note"). The Note provides for monthly payments, with the full debt, if not paid earlier, due and payable on
  August 1, 2025   . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and attorneys' fees, together with all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage and hypothecate to Lender the following described property located in
  Orleans   Parish, Louisiana:

SEE EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF

which has the address of   3641 Rue Denise, New Orleans   [Street, City],
Louisiana   70114   ("Property Address");
   [Zip Code]

**LOUISIANA** - Single Family - FNMA/FHLMC UNIFORM INSTRUMENT
  -6V(LA) (9212).01
  VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 6   Initials: ___
Form 3019 1/91
Amended 5/91

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage and hypothecate the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve

Form 3019 1/91

Initials: _____

payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

Form 3019 1/91

Initials: _____

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand for payment as provided for in Article 2639 of the Louisiana Code of Civil Procedure which is hereby specifically waived and may cause the Property to be seized and sold under either ordinary or executory process, with or without appraisement, to the highest bidder for cash. Borrower hereby confesses judgment in favor of Lender and any future holder of the Note in the full amount of all sums secured by this Security Instrument, including, but not limited to, attorneys' fees of            10%            % of the sums due under the Note, but not less than U.S. $ N/A**

**22. Cancellation.** Upon payment of all sums secured by this Security Instrument, Lender shall deliver to Borrower the original Note for submission to the Clerk of Court for the purpose of cancelling this Security Instrument. Borrower shall pay the cancellation costs.

Form 3019 1/91

Initials: _____

**23. Waiver of Homestead.** Borrower and Borrower's spouse, if any, waive all claims and rights of homestead exemption in the Property.

**24. Savings and Loan Associations.** If Lender is a savings and loan association, the Note and other sums secured by this Security Instrument shall also have the benefits of all the provisions contained in Louisiana Revised Statutes, Title 6, Section 830.

**25. Future Advances.** Lender may, but shall not be required to, make advances to protect the security of this Security Instrument pursuant to paragraph 7. At no time shall the principal amount of the indebtedness secured by this Security Instrument, including advances pursuant to paragraph 7, exceed one hundred fifty percent (150%) of the original amount of the indebtedness set forth in the Note.

**26. Late Charge.** Borrower shall pay to Lender a late charge of   4%   percent of any monthly installment of principal and interest as provided in the Note not received by Lender within   15   days after such installment is due.

**27. Marital Status.** The marital status of Borrower is:  married to and living with each other.

**28. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☒ V A Rider | ☒ Other(s) [specify] EXHIBIT "A" | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it. Borrower, each witness, Lender and I, Notary, have signed this Security Instrument for the purposes stated after a complete reading.

THUS DONE, READ AND PASSED at my office in     Baton Rouge                    , Louisiana, on     August 1, 1995                    , in the presence of the two undersigned competent witnesses who have hereunto signed their names together with said appearers and me, Notary, for the purposes stated after a complete reading.

Witnesses:

_____

_____

_____ (Seal)
-Borrower

_____
WILTON T. McCAY, JR.
SS# ████████

VIRGINIA TUNSTALL McCAY
SS# ████████
BY: _____ (Seal)
AGENT AND ATTORNEY IN FACT   -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

Lender:  HIBERNIA NATIONAL BANK

By: _____

    Dannie G. White

Title:  Agent

Notary qualified in   East Baton Rouge

_____ Parish

## V.A. GUARANTEED LOAN AND ASSUMPTION POLICY RIDER

# NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

THIS V.A. GUARANTEED LOAN AND ASSUMPTION POLICY RIDER is made this   1st   day of   August  , 1995 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Deed to Secure Debt (herein "Security Instrument") dated of even date herewith, given by the undersigned (herein "Borrower") to secure Borrower's Note to   HIBERNIA NATIONAL BANK

(herein "Lender")

and covering the Property described in the Security Instrument and located at

3641 Rue Denise
New Orleans, Louisiana 70114
(Property Address)

V.A. GUARANTEED LOAN COVENANT: In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

If the indebtedness secured hereby be guaranteed or insured under Title 38, United States Code, such Title and Regulations issued thereunder and in effect on the date hereof shall govern the rights, duties and liabilities of Borrower and Lender. Any provisions of the Security Instrument or other instruments executed in connection with said indebtedness which are inconsistent with said Title or Regulations, including, but not limited to, the provision for payment of any sum in connection with prepayment of the secured indebtedness and the provision that the Lender may accelerate payment of the secured indebtedness pursuant to Covenant 17 of the Security Instrument, are hereby amended or negated to the extent necessary to conform such instruments to said Title or Regulations.

LATE CHARGE: At Lender's option, Borrower will pay a "late charge" not exceeding four per centum (4%) of the overdue payment when paid more than fifteen (15) days after the due date thereof to cover the extra expense involved in handling delinquent payments, but such "late charge" shall not be payable out of the proceeds of any sale made to satisfy the indebtedness secured hereby, unless such proceeds are sufficient to discharge the entire indebtedness and all proper costs and expenses secured hereby.

GUARANTY: Should the Department of Veterans Affairs fail or refuse to issue its guaranty in full amount within 60 days from the date that this loan would normally become eligible for such guaranty committed upon by the Department of Veterans Affairs under the provisions of Title 38 of the U.S. Code "Veterans Benefits," the Mortgagee may declare the indebtedness hereby secured at once due and payable and may foreclose immediately or may exercise any other rights hereunder or take any other proper action as by law provided.

TRANSFER OF THE PROPERTY: If all or any part of the Property or any interest in it is sold or transferred, this loan may be declared immediately due and payable upon transfer ("assumption") of the property securing such loan to any transferee ("assumer"), unless the acceptability of the assumption and transfer of this loan is established by the Department of Veterans Affairs or its authorized agent pursuant to Section 3714 of Chapter 37, Title 38, United States Code.

An authorized transfer ("assumption") of the property shall also be subject to additional covenants and agreements as set forth below:

## EXHIBIT "A"

A CERTAIN PIECE OR PORTION OF GROUND, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes and appurtenances thereunto belonging or in anywise appertaining, situated in the Fifth District of the City of New Orleans, in **BOCAGE SUBDIVISION** (being a resubdivision of Parcels A, B and C of Aurora Plantation), as delineated on a plan of survey and subdivision by Adloe Orr, Jr. & Associates, C.E., and Land Planners, dated Janu;ary 7, 1966, approved by the City Planning Commission under the docket No. 176-65, final plan approval adated 2/16/67, which said plan is registered in COs 678, folio 537 for the Parish of Orleans, and said property is more fully described as follows:

**LOT NO. 50, SQUARE NO. 136**, which said square is bounded by Carlisle Court, Rue Nichols, LaCour Monique and Rue Denise, and said Lot No. 50 measures 60 feet front on Rue Denise, the same in width in the rear, by a depth of 110 feet between equal and parallel lines and commences at a distance of 457.54 feet from the corner of Carlisle Court and Rue Denise. All as more fully shown on survey by Gilbert, Kelly & Couturie, Inc., dated August 26, 1980, a copy of which is annexed to act recorded in MOB 2360, Folio 62, official records of the Parish of Orleans, State of Louisiana.

NOTARIAL ENDORSEMENT AND ASSIGNMENT OF MORTGAGE NOTE

"RECORDED AS GIVEN"

STATE OF LOUISIANA    Recordation Information Not Furnished
                      Document Not Cross Indexed With Ori...    INSTR No. 335193

PARISH OF LIVINGSTON                                  MORTGAGE OFFICE
                                                      PARISH OF ORLEANS

BE IT KNOWN, that on    AUG 21 1995    , before the undersigned Notary Public, duly
commissioned and qualified in and for the State and Parish aforesaid, personally came and appeared:

GERALD J. LACHNEY

hereinafter called the "Appearer", duly authorized and herein representing HIBERNIA NATIONAL BANK, who after
first being duly sworn declared:

That, for value received, the Hibernia National Bank does hereby assign, transfer, sell and deliver to:

RESOURCE BANCSHARES MORTGAGE GROUP, INC.

without recourse, one (1) certain mortgage note described as follows:

| | |
|---|---|
| Dated and signed by the makers on: | August 1, 1995 |
| Original principal amount of: $ | 84,018.00 |
| Per annum interest rate of: | 8.000 |
| Made and subscribed by: | WILTON T. McCAY, JR. |
| | VIRGINIA TUNSTALL McCAY |
| Monthly Installments of: $ | 676.49 |
| Payable to the order of: | HIBERNIA NATIONAL BANK |

Which said mortgage note is secured by a certain mortgage or deed of trust of even date therewith, was executed
by the said parties and recorded in the Official Public Records of

ORLEANS                      Parish/County,    Louisiana

                                                                                , all of
the above mentioned instruments concerning the following described property:

LOT 50, SQUARE 136, BOCAGE SUBDIVISION SITUATED IN THE FIFTH
DISTRICT OF THE CITY OF NEW ORLEANS, ORLEANS PARISH, LOUISIANA

The Hibernia National Bank is the legal and equitable owner of said mortgage note and mortgage or deed of trust
with full power to sell and assign same; that it has executed no prior assignment or pledge thereof; that it has
executed no release discharge, satisfaction or cancellation of said mortgage or deed of trust; that it has executed
no instrument of any kind affecting the mortgage or deed of trust or the mortgage note or the liability of the maker
or makers thereof.

And here the said Appearer, to evidence said transfer, did in his official capacity on behalf of the said Hibernia
National Bank endorse the above described mortgage note to the order of:

without recourse, and I, Notary Public, did paraph the same for identification herewith.

THUS DONE AND PASSED in my office in the State and Parish aforesaid, on the date first above written, in the
presence of the undersigned competent witnesses, who have signed these presents with said Appearer and me,
Notary Public, after a reading of the whole.

WITNESSES:                                    HIBERNIA NATIONAL BANK,

_Adrienne Hanen_                          By _Gerald J. Lachney_
_Cee Cee Picon_                               GERALD J. LACHNEY
                                              ASSISTANT VICE PRESIDENT


                              _Faye Boas_
                              Notary Public
                              My Commission ...             ...SSIGNMENT    20.00

VERIFIED

INSTR. No. 378499
MORTGAGE OFFICE
PARISH OF ORLEANS

Prepared by & return to:
GISTV2
Resource Bancshares Mortgage Group, Inc.
7909 Parklane Road Suite 150 Columbia SC 29223-5000
1(800)933-2930 EXT. 4727

LOAN #:
POOL #:
RBMG LOAN #:

96-39983 319

STATE OF LOUISIANA
PARISH OF   ORLEANS

ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED the undersigned hereby grants, assigns and transfers to
NATIONSBANC MORTGAGE CORPORATION
205 Park Club Lane Buffalo NY 14231-5000
all the rights, title and interest of undersigned in and to that certain Real Estate Mortgage:

Executed by:  WILTON T. MCCAY, JR. AND VIRGINIA TUNSTALL MCCAY

Mortgage Dated:   08/01/95
Book/Volume No.:                        Page:
Document NO.:  325397
Date Recorded:  08/11/95  in  ORLEANS                          Louisiana.

Legal Description:
NOT REQUIRED BY COUNTY

TOGETHER, with the note or notes therein described or referred to, the money due and to become due thereon
with interest, and all rights accrued or to accrue under said Real Estate Mortgage.

Attest:                                         Resource Bancshares Mortgage Group, Inc.

Dorothy Knight                                  Debra Miller
Assistant Secretary                             Assistant Vice President

WITNESSED BY:

Homo Fulmer

Tammy Wallace

STATE OF   South Carolina
COUNTY OF   Richland

On this  July 30, 1996          before me, the undersigned a Notary Public in and for said County and State
personally appeared Debra Miller                         known to me to be
Assistant Vice President            and  Dorothy Knight                 known to me to be
Assistant Secretary                            of the corporation herein which executed the within instrument, that the
seal affixed to said instrument is the corporate seal of said corporation, that said instrument was signed and
sealed on behalf of said corporation pursuant to its by-laws or a resolution of its Board of Directors and that
being informed of the contents of transfer he/she acknowledges said instrument was executed voluntarily for and
as the act of the corporation.

Ruth C. Hinson                   Notary Public
MY COMMISSION EXPIRES:  09/26/99

09-19-96                    ASSIGNMENT            20.00

## CORPORATE ASSIGNMENT OF MORTGAGE

Orleans, Louisiana
SELLER'S SERVICING ██████ MCCAY, JR."

Date of Assignment: September 23rd, 2015
Assignor: BANK OF AMERICA, NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO BA MORTGAGE, LLC, SUCCESSOR BY MERGER TO NATIONSBANC MORTGAGE CORP., BY NATIONSTAR MORTGAGE LLC ITS ATTORNEY-IN-FACT at 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019
Assignee: NATIONSTAR MORTGAGE LLC at 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019

Executed By: WILTON T. MCCAY, JR. AND VIRGINIA TUNSTALL MCCAY  To: HIBERNIA NATIONAL BANK
Date of Mortgage: 08/01/1995 Recorded: 08/11/1995 as Registry Number: 325397 In the Parish of Orleans, State of Louisiana.

-Assigned by RESOURCE BANCSHARES MORTGAGE GROUP, INC. TO NATIONSBANC MORTGAGE CORPORATION Dated: 07/30/1996 Recorded: 09/19/1996 as Registry Number: 378499

Property Address: 3641 RUE DENISE, NEW ORLEANS, LA 70114

Legal:  See Exhibit "A" Attached Hereto And By This Reference Made A Part Hereof

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $84,018.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

BANK OF AMERICA, NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO BA MORTGAGE, LLC, SUCCESSOR BY MERGER TO NATIONSBANC MORTGAGE CORP., BY NATIONSTAR MORTGAGE LLC ITS ATTORNEY-IN-FACT
On ___ SEP 24 2015

By: _____
VALENCIA METCALF, Assistant Secretary

WITNESS

_____
Linda C. Niles

WITNESS

_____
Nicole Lugar

STATE OF Texas
COUNTY OF Denton

On ___ SEP 24 2015 ___, before me, DARLA D. DUNCAN, a Notary Public in and for Denton in the State of Texas, personally appeared VALENCIA METCALF, Assistant Secretary, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
DARLA D. DUNCAN
Notary Expires: 07/25/2019

> DARLA D. DUNCAN
> Notary Public, State of Texas
> My Commission Expires
> July 25, 2019

(This area for notarial seal)

When Recorded Return To: DOCUMENT ADMINISTRATION, Nationstar Mortgage 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019
Recording Requested By: Nationstar Mortgage

Hon. Dale N. Atkins
CLERK OF CIVIL DISTRICT COURT
INST #: 2015-43164 10/08/2015 02:57:52 PM
TYPE: ASSMT MORT 3 PG(S)

## EXHIBIT "A"

A CERTAIN PIECE OR PORTION OF GROUND, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes and appurtenances thereunto belonging or in anywise appertaining, situated in the Fifth District of the City of New Orleans, in BOCAGE SUBDIVISION (being a resubdivision of Parcels A, B and C of Aurora Plantation), as delineated on a plan of survey and subdivision by Adlow Orr, Jr. & Associates, C.E., and Land Planners, dated January 7, 1966, approved by the City Planning Commission under the docket No. 176-65, final plan approval adated 2/16/67, which said plan is registered in COB 678, folio 537 for the Parish of Orleans, and said property is more fully described as follows:

LOT NO. 50, SQUARE NO. 136, which said square is bounded by Carlisle Court, Rue Nichols, LaCour Monique and Rue Denise, and said Lot No. 50 measures 60 feet front on Rue Denise, the same in width in the rear, by a depth of 110 feet between equal and parallel lines and commences at a distance of 457.54 feet from the corner of Carlisle Court and Rue Denise.  All as more fully shown on survey by Gilbert, Kelly & Couturie, Inc., dated August 26, 1980, a copy of which is annexed to act recorded in MOB 2360, Folio 62, official records of the Parish of Orleans, State of Louisiana.

1340 Poydras Street, 4th Floor
New Orleans, Louisiana 70112

Telephone (504) 407-0005



Chelsey Richard Napoleon
Chief Deputy Clerk

Land Records Division

# Hon. Dale N. Atkins

**Clerk of Court and Ex-Officio Recorder**
Parish of Orleans

## DOCUMENT RECORDATION INFORMATION

Instrument Number: 2015-43164

Recording Date: 10/8/2015 02:57:52 PM

Document Type: ASSIGNMENT OF MORTGAGE

Addtl Titles Doc Types:

Mortgage Instrument Number: 1200119

Filed by: DEAN MORRIS LLP
PO BOX 2867

MONROE, LA 712072867

THIS PAGE IS RECORDED AS PART OF YOUR DOCUMENT AND
SHOULD BE RETAINED WITH ANY COPIES.



# Broker Price Opinion

☒ Exterior Inspection
☐ Interior Inspection

| | | | |
|---|---|---|---|
| Property Address: | 3641 Rue Denise | Vendor ID: | ▮▮▮ |
| City, State, Zip: | New Orleans, LA 70131 | Deal Name: | |
| Loan Number: | ▮▮▮ | Inspection Date: | 11/16/2018 |
| 2nd Loan / Client #: | | Subject APN: | ▮▮▮ |

| Property Occupancy Status | Owner | Does the Property Appear Secure? | Yes | Est. Monthly Rent | $1,320 | Sold in the last 12 Months? | No |
|---|---|---|---|---|---|---|---|
| Currently Listed | Currently List Broker | List Broker Contact # | Initial List Price | Initial List Date | Current List Price | DOM / CDOM | Sale Price: |
| No | | | | | | | |
| Is the Subject Listing Currently Pending? | | Date of Contract | | CDOM to Contract | | Sale Date: | |

**Subject Property Comments / External Influences**

The subject is a SFR style home in average condition.

| | Subject | Sold Comp 1 | Sold Comp 2 | Sold Comp 3 | List Comp 1 | List Comp 2 | List Comp 3 |
|---|---|---|---|---|---|---|---|
| |  | | | | | | |
| Address | 3641 Rue Denise New Orleans, LA 70131 | 5877 Macarthur Bl New Orleans, LA 70131 | 3610 Rue Denise New Orleans, LA 70131 | 3700 Rue Renee St New Orleans, LA 70131 | 4001 S Inwood Av New Orleans, LA 70131 | 3529 Somerset Dr New Orleans, LA 70131 | 5237 Berkley Dr New Orleans, LA 70131 |
| Proximity | | 0.42 Miles | 0.05 Miles | 0.22 Miles | 0.75 Miles | 0.37 Miles | 0.27 Miles |
| Sale/List Price | | $141,000 | $170,000 | $172,000 | $159,900 | $174,500 | $175,000 |
| Sale Date | | 8/17/2018 | 7/10/2018 | 6/12/2018 | active | active | active |
| Price Per Sq.ft. | $67.60 | $68.75 | $81.89 | $76.44 | $63.68 | $85.54 | $75.01 |
| Initial List Price | | $141,000 | $167,900 | $169,000 | $159,900 | $174,500 | $175,000 |
| Initial List Date | | 6/25/2018 | 1/5/2018 | 4/10/2018 | 6/3/2018 | 7/24/2018 | 9/20/2018 |
| Current/Final List | | $141,000 | $167,900 | $169,000 | $159,900 | $174,500 | $175,000 |
| DOM/CDOM | | 53 / 53 | 186 / 186 | 63 / 63 | 164 / 164 | 113 / 113 | 56 / 56 |
| Sales Type | | Fair Market | Fair Market | Fair Market | Fair Market | Fair Market | Fair Market |
| Finance Incentives | | None | None | None | None | None | None |
| Living Area | 2441 | 2051 | 2076 | 2250 | 2511 | 2040 | 2333 |
| #Rooms/Bed/Bath 1 | 6 / 3 / 2 | 7 / 4 / 2.5 | 6 / 3 / 2.5 | 7 / 4 / 2 | 7 / 4 / 2 | 7 / 4 / 2 | 6 / 3 / 2 |
| Year Built | 1970 | 1965 | 1977 | 1974 | 1973 | 1968 | 1958 |
| Bsmnt SF/% Finished | | | | | | | |
| Lot Size | 0.15ac | 0.14ac | 0.16ac | 0.15ac | 0.12ac | 0.16ac | 0.17ac |
| Property Type | SF Detach | SF Detach | SF Detach | SF Detach | SF Detach | SF Detach | SF Detach |
| Style / Quality | Colonial / Q4 | Colonial / Q4 | Colonial / Q4 | Ranch / Q4 | Colonial / Q4 | Ranch / Q4 | Ranch / Q4 |
| # of Units | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Condition | C4 | C4 | C4 | C4 | C4 | C4 | C4 |
| Pool/Spa | None | No / No | No / No | No / No | Yes / No | No / No | No / No |
| View | Residential | Residential | Residential | Residential | Residential | Residential | Residential |
| Porch/Patio/Deck | No / No / No | No / No / No | No / No / No | No / No / No | No / No / No | No / No / No | No / No / No |
| Fireplace | No | No | No | No | No | No | No |
| Garage | None | 2 Attached | 3 Detached | 2 Attached | 2 Detached | 2 Carport | 1 Attached |
| Other Features | None | None | None | None | None | None | None |
| HOA Fees | 0/mo | 0/mo | 0/mo | 0/mo | 0/mo | 0/mo | 0/mo |
| Subdivision | Orleans | Orleans | Orleans | Orleans | Orleans | Orleans | Orleans |
| School District | New Orleans | New Orleans | New Orleans | New Orleans | New Orleans | New Orleans | New Orleans |
| Common Amenities | | | | | | | |
| Data Source - ID | County Tax - | | | | | | |

| Market Time 90-120 days | As-Is Price Estimate | As-Repaired Price Estimate | Land Only Price |
|---|---|---|---|
| Anticipated Sale Price | $165,000 | $165,000 | $3,960 |
| Recommended List Price | $170,000 | $170,000 | |
| Recommended Sales Strategy: | ☒ As - Is | ☐ Repaired | |



| Address | City | BR | BA | Lot Size | Sale/List Date | Year Built | Sale/List Price | Distance |
|---|---|---|---|---|---|---|---|---|
| 3641 Rue Denise | New Orleans | 3 | 2 | 0.15ac | | 1970 | | |
| 5877 Macarthur Bl | New Orleans | 4 | 2.5 | 0.14ac | 8/17/2018 | 1965 | $141,000 | 0.42 Miles |
| 3610 Rue Denise | New Orleans | 3 | 2.5 | 0.16ac | 7/10/2018 | 1977 | $170,000 | 0.05 Miles |
| 3700 Rue Renee St | New Orleans | 4 | 2 | 0.15ac | 6/12/2018 | 1974 | $172,000 | 0.22 Miles |
| 4001 S Inwood Av | New Orleans | 4 | 2 | 0.12ac | 6/3/2018 | 1973 | $159,900 | 0.75 Miles |
| 3529 Somerset Dr | New Orleans | 4 | 2 | 0.16ac | 7/24/2018 | 1968 | $174,500 | 0.37 Miles |
| 5237 Berkley Dr | New Orleans | 3 | 2 | 0.17ac | 9/20/2018 | 1958 | $175,000 | 0.27 Miles |

**Neighborhood Data:**

Location Type: Suburban    Market Trend: Stable    Economic Trend: Stable    Neighborhood Trend: Stable

Housing Supply: Stable    Crime/Vandalism: Low Risk    REO Driven? No    Avg Age of Home: 48

Neighborhood Pride of Ownership: Average    Avg Marketing Time of Comparable Listings: 3 to 6 Mos.

Price Range: $121,000 to $195,000    Median Price: $165,400    Predominate Value: $165,400    Average DOM: 105

Number of units for rent:    Number of units in complex for sale:

Negative Neighborhood Factors that will detract from the subject:

None Noted

Neighborhood Comments:

Neighborhood appears to be in average condition when compared to other similar communities in the area.

**Marketability of Subject:**

Most Likely Buyer: Owner    Types of Financing the Subject will NOT qualify for: None

Will this be a problem for resale? If yes, please explain:

None Noted

**Comparables:**

| | |
|---|---|
| Sale 1 Comments | Adjustments = GLA = $7840, BED = -$4000, BATH = -$1000, Garage = -$6000, Lot Size = -$30, Total adjustments = -$3130, Net Adjusted Value = $137870 The property is similar in style and slightly inferior in GLA. |
| Sale 2 Comments | Adjustments = GLA = $7300, BATH = -$1000, Garage = -$6000, Lot Size = -$30, Total adjustments = $270, Net Adjusted Value = $170270 The property is similar in bed count and inferior in GLA. |
| Sale 3 Comments | Adjustments = GLA = $3820, BED = -$4000, Garage = -$6000, Lot Size = -$5, Total adjustments = -$6185, Net Adjusted Value = $165816 The property is similar in year built and superior in bed count. |
| List 1 Comments | Adjustments = GLA = -$1400, BED = -$4000, Garage = -$6000, Pool = -$5000, Lot Size = $90, Total adjustments = -$16310, Net Adjusted Value = $143590 The property is similar in style and superior in bed count. |
| List 2 Comments | Adjustments = GLA = $8020, BED = -$4000 Carport = -$4000, Lot Size = -$30, Total adjustments = -$10, Net Adjusted Value = $174490 The property is similar in year built and slightly inferior in GLA. |
| List 3 Comments | Adjustments = GLA = $2160, Garage = -$3000, Lot Size = -$62, Age = $3600, Total adjustments = $2698, Net Adjusted Value = $177698 The property is similar in bed count and inferior in year built. |

**Comments:**

Service Provider Comments:

To locate the comparables in close proximity of subject ,it was necessary to exceed closed date ,lot size ,GLA ,age ,bed/bath count ,style In delivering final valuation, most weight has been placed on CS2 and LC2, as they are most comparable/similar to subject condition and overall structure.Subject is located close to school with comparables located on the same side. The presence of school will have no impact on subjects value and marketability.Our pricing suggestion came about from analyzing the most current comps which are located as close to subject as possible and are as close as feasible in square footage, rooms, style and acreage with subject property.

Vendor Comments:

| | | | |
|---|---|---|---|
| Service Provider Signature | /s/ Tom Crumley | BPO Effective Date | 11/16/2018 |
| Service Provider Company | Bang Realty | Service Provider Lic. Num. | ██████████ |

**Repairs**

Recommended Repairs would bring the subject to: $165,000

| Internal Repairs | Comment | Total |
|---|---|---|
| Paint | | $0 |
| Walls/Ceiling | | $0 |
| Carpet/Floors | | $0 |
| Cabinets/Countertops | | $0 |
| Plumbing | | $0 |
| Electrical | | $0 |
| Heating/AC | | $0 |
| Appliances | | $0 |
| Doors/Trim | | $0 |
| Cleaning | | $0 |
| Other | | $0 |
| | Internal Repair Total: | |

| External Repairs | Comment | Total |
|---|---|---|
| Roof | | $0 |
| Siding/Trim | | $0 |
| Structural | | $0 |
| Windows/Doors | | $0 |
| Paint | | $0 |
| Foundation | | $0 |
| Garage | | $0 |
| Landscaping | | $0 |
| Fence | | $0 |
| Other | | $0 |
| | External Repair Total: | |
| | Repair Total: | |



Subject Front

**3641 Rue Denise**
**New Orleans, LA 70131**



Address



Side



Side



Street



Street



View across street



**Comparable Sale #1**

5877 Macarthur Bl
New Orleans, LA 70131
Sale Date: 8/17/2018
Sale Price: $141,000



**Comparable Sale #2**

3610 Rue Denise
New Orleans, LA 70131
Sale Date: 7/10/2018
Sale Price: $170,000



**Comparable Sale #3**

3700 Rue Renee St
New Orleans, LA 70131
Sale Date: 6/12/2018
Sale Price: $172,000



**Comparable Listing #1**

4001 S Inwood Av
New Orleans, LA 70131
Current List: $159,900



**Comparable Listing #2**

3529 Somerset Dr
New Orleans, LA 70131
Current List: $174,500



**Comparable Listing #3**

5237 Berkley Dr
New Orleans, LA 70131
Current List: $175,000

Neither Xome Valuation Services LLC nor any of its affiliates, members, managers, contractors makes any representation or warranty as to the accuracy or completeness of the information contained in this broker price opinion. You should use good faith efforts in determining that the content of all information to be provided to or obtained by you is accurate. This analysis has been performed by a licensed real estate professional and is intended for the benefit of the addressee only. The Brokers Price Opinion is not to be construed as an appraisal and may not be used as such for any purpose. The purpose of this BPO is to provide an estimate of the probable sales price of the property, utilizing the sales comparison approach methodology and will not be used for loan origination. This opinion may not be used by any party as the primary basis to determine the value of a parcel of real property for a mortgage loan origination, including first and second mortgages, refinances or equity lines of credit. Notwithstanding any preprinted language to the contrary, this opinion is not an appraisal of the market value of the property. If an appraisal is desired, the services of a licensed appraiser must be obtained.